**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case Number: 21mj609** |
| **RAYMOND GLOVER,** | : | |
| | : | **Detention Hearing:  September 23, 2021** |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF**
**PRETRIAL DETENTION OF DEFENDANT RAYMOND GLOVER**

From 2020 through the date of the search warrant execution at his residence, Raymond Glover was a part of several groups devoted to exploiting children.  He was sharing, viewing, receiving, and possessing child pornography.  In fact, his activity was so prolific that, when agents arrived at his house to execute the warrant at 6 a.m., they found an active virtual chat session on his laptop, which was plugged into an external monitor.  One screen displayed a user sharing a video of an infant being forced to engage in oral sex and then vaginally raped.  The other displayed the other adult male group members, several of whom were actively masturbating to the content.  Glover was a member of no less than four Telegram chat groups and also used other social media platforms to engage with other like-minded individuals.  The groups he was in took discussing the abuse of children to new levels and the members were egregious even amongst child pornography offenders.  They had a special interest in abusing toddlers and infants and some were actively abusing children they had access to.

The Government moves for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A).  Glover has been charged by criminal complaint in the District of Columbia with one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2).  This is a crime of violence, and there

1

is a presumption of Glover's dangerousness.  Under the factors outlined in 18 U.S.C. § 3142(g), there are no condition or combination of conditions that will reasonably assure the safety of any person and the community or Glover's presence in court if he is released.

### FACTUAL BACKGROUND

In April of 2021, HSI executed a search warrant at the residence of S-2.  S-2 was a member of an 18-person group on Application A.  Many of those group members have been apprehended and the investigation has been ongoing for more than a year.  During that time, law enforcement has discovered that some group members were actively abusing children, sharing production images with the other group members, and threatening to kidnap children.  S-2 admitted to being a member of this group on Application A as well as a second group and stated that he had sexually abused a five-year old child.  HSI agents examined his devices and learned that the second group he was a member of was a 49-person group devoted to the exploitation of children.  The purpose of the group appeared to be live streaming sex abuse images of children to the group.  Agents observed that 130 links had been shared in the group, many from Mega and DropBox.  Mega removed links finding that they contained "objectionable content, such as Child Exploitation Material, Violent Extremism, or Bestiality."  The DropBox links were no longer valid.  Agents also observed a number of posts related to the exploitation of children.

A few examples of these posts are:

> a. August 30, 2019, by a deleted account warned other users in the group to use a specific technology to obfuscate efforts to locate them and said, "It's always fun to beat a (police officer emoji)."

b.   September 12, 2019, by a deleted account, "Anyone have any boy vids they wanna trade"; "I can trade boy vids hit me up"; "Can someone unlock room? Any rooms?"; "Anyone wanna trade boy Vids?"

c.   September 15, 2019, "lookin to join a small nepi room with a couple hot extreme pervs hmu"

d.   September 26, 2019. "Any nepi rooms? Looking to get twisted and blow my load"; "OMG, you are a fucking sick twisted pervert nepi pedophile!!! That is wonderful!!!"

e.   November 17, 2019, "Fuck ya I want to raise boys with another pedo, train those boys how to smoke meth by 8  Then how to self slam by ten"; "I want them sitting on my cock when they do  We will "gape" their asses"

"Nepi" refers to an individual who is attracted to toddlers and infants.  On April 1, 2020, Glover posted in the chat that he had lost access to his old "ring account" and provided his gmail account, an account that contains portions of his name as well as "dc."  The search warrant of his Gmail account revealed many emails with his name and address.  The Google Drive account contained child pornography and child erotica files, to include videos of a prepubescent male being anally penetrated by another minor male and a minor male having oral sex with another minor male.  These two videos were dated January 21 and January 26, 2020.  One was titled "Two Brothers 9yo and 13yo … suck cock…."  Another was titled "!14…BJ."  (The file names have been redacted to prevent further dissemination of child pornography).

Agents confirmed Glover's address and executed a search warrant at that address in D.C. on September 21, 2020.  Glover lived alone in a one-bedroom apartment.  When they arrived at

6:00 a.m., Glover's laptop and connected monitor were displayed on his desk in the living room. A child pornography video was playing on one screen. The video depicted an infant being orally penetrated and vaginally raped by an adult male. On another screen, a number of adult males appeared to be watching and masturbating. Glover stated that he had just logged into this Application, (a different social media application, hereinafter Application B). Application B is similar to Web-Ex or Microsoft Teams. Users can see video of other users and live stream or share video. The adult males who were in the room masturbating had their videos on, and it appeared that someone was sharing the child pornography to the room. Glover denied having paid attention to what was going on in the room, stating that he had been on the phone with a friend.

Glover further stated that he had thoughts about self-harm and that he had attempted suicide the week before the search warrant. Agents seized 13 electronic devices, to include two phones, the laptop, and a number of others. Glover confirmed that all the devices were his and that he had lived alone at the residence since January of 2021. He admitted to being on Application A and acknowledged seeing child pornography shared in that application. He provided his phone passcode and stated that agents would find child pornography on his phone. He also admitted that other users would post links that he followed that led him to child pornography. He estimated the youngest children he had collected child pornography of were about five to six-years old. He said that he had been a member of four different Application A chat groups, but was now only a member of three. On the phone, which is connected to an Application A account, agents discovered that Glover was in several different Application A groups and that the groups were primarily devoted to the exploitation of children. They also observed that Glover had clicked on and saved numerous of the child pornography files that

were shared in these groups.

Within a few minutes, agents observed over 25 videos of child pornography.  Some examples include:

    a.  A video approximately 1 minute and 23 seconds in length.  This video file depicts a prepubescent female who is penetrated by an adult male's penis in her vagina.

    b.  A video file approximately 52 seconds in length.  This video file depicts a prepubescent female who is penetrated by an adult male penis in her vagina.

    c.  A video file approximately 30 seconds in length.  This video filer depicts an adult male who penetrates a female infant with his finger in her vagina.

Glover also said that he had referenced having children in chats on Application A, telling other users he was a "true" dad.  Finally, agents learned that Glover worked exclusively from home and that there was a daycare in the building where he lived.  They also discovered approximately a gram of methamphetamine on the desk next to the laptop and monitor where the child pornography was playing.

## APPLICABLE LEGAL STANDARD

The Bail Reform Act permits a judicial officer to hold an individual without bond pending trial if the officer finds clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Pursuant to 18 U.S.C. § 3142(f)(1)(A), the judicial officer shall hold a hearing on the question of detention upon the motion of the government in a case that involves a crime of violence. A crime of violence is defined to include any felony under Chapter 110 or Chapter 117. 18 U.S.C. § 3156(a)(4)(C).

The crime of receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2), is a felony offense under Chapters 110, and, as such, a crimes of violence that under 18 U.S.C. § 3142(e)(3)(E) create a rebuttable presumption that the defendant constitutes a danger to the community, and that no pretrial release condition or combination of conditions may be imposed to ensure the safety of any other person and the community. This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985).

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010)

("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## ANALYSIS

For the reasons that follow, the Government submits that there are no condition or combination of conditions that will reasonably assure the safety of any other person and the community or Glover's appearance in court if he is released.

### A.     Nature and Circumstances of the Charged Offense

The nature and circumstances of this offense demonstrate Glover's dangerousness.  Not only did Glover receive and share child pornography, he joined at least four groups of likeminded individuals, some of whom had abused or were actively abusing children.  And, the group Glover joined was focused on especially young children, infants and toddlers.  Glover himself had videos of infant rape, and he was actively watching one with other adult males (who were sexually gratifying themselves with it) when agents hit the door.  Moreover, Glover and the individuals he was colluding with were using encryption and other technology to obfuscate law enforcement efforts to locate them.  The only way that Glover was eventually apprehended was through law enforcement's infiltration of an Application A chat after another user was arrested in the group. The nature and circumstances of the offense warrant detention.

### B. The Weight of the Evidence Against the Defendant

The weight of the evidence is strong and favors detention.  Glover admitted to being on Application A in multiple groups, to clicking on links, to his username, and to receiving child pornography.  Moreover, HSI observed the Application A chat thread and groups on his cellular

7

phone, and the cell number was linked to the account.  They discovered over 25 child pornography files within a few minutes of review of that device.  In addition, agents took screenshots of Glover's laptop and monitor, which were both on when they opened the door. Those devices showed his activity in Application B and revealed that he and others were viewing child pornography.  And, Glover's Google Drive account, which is linked to him by dozens of emails with his name and address and other account activity, revealed additional child pornography and additional links to the Application A chat thread.

### C. The History and Characteristics of the Defendant

Glover does not have any criminal history.  However, Glover's criminal conduct here was not a spontaneous decision made in a moment of weakness.  He made the decision day in and day out to access, share, and receive child pornography and got invited to an "elite" group of pedophiles.  He did so at least as early as 2020 and continuing through the date of the search warrant execution.  The level of his addiction to this material is demonstrated by the fact that he actively engaged in viewing it with a group of like-minded adult males *on the morning of the search warrant execution.*  He faces a mandatory minimum of five years and a maximum of twenty years' imprisonment.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

Glover's release would put the public and children everywhere at-risk.  Every red flag has been raised when it comes to his behavior.  It would be troublesome enough if Glover simply had accessed and viewed sexually explicit depictions of young children being brutally raped. But, here Glover's conduct goes far beyond that.  He communicated with multiple groups (at least four) of like-minded individuals, clicked on links to access child pornography, referenced that he was a "true" dad in chats with other pedophiles, and saved particular images and videos

to least two different platforms (Application A and also his Google Drive account).  Glover also is a danger to himself, both because he is a suicide-risk and because of his methamphetamine use.

## <u>CONCLUSION</u>

There are no condition or combination of conditions that would ensure the safety of the community if Glover were to be released.


Respectfully submitted,

CHANNING PHILLIPS
Acting United States Attorney


By: _____*/s/ April N. Russo*_____
April N. Russo
Assistant U.S. Attorney
PA Bar: 313475
U.S. Attorney's Office for the District of Columbia
555 Fourth Street NW, Fourth Floor
Washington, DC 20530

Date: September 22, 2021

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of this pleading was served on all counsel of record via the Court's electronic filing service.


                                        */s/   April N. Russo*
                                        April N. Russo
                                        Assistant United States Attorney

Date:  September 22, 2021