# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | |
| : | Case Number: 21mj609 |
| **RAYMOND GLOVER,** : | |
| : | Detention Hearing:  November 15, 2021 |
| **Defendant.** : | |

## GOVERNMENT'S RESPONSE TO EMERGENCY MOTION
## FOR PLACEMENT AT THE CORRECTIONAL TREATMENT FACILITY

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby respectfully files this Opposition to Defendant Glover's Motion for Placement at the Correctional Treatment Facility ("CTF").  For the reasons below, the Court should deny Defendant's request to be transferred to CTF.

Glover, along with many other defendants previously detained or currently at CDF, requests a transfer to CTF based primarily on a memorandum from the U.S. Marshals Service ("USMS") dated November 1, 2021, detailing concerns allegations about the conditions at CDF (the location where Glover is currently housed).  The Marshals' preliminary findings are concerning, and detail various unsanitary conditions at CDF.  As a result of their findings, the USMS indicated it would transfer its federal inmates from CDF to a Bureau of Prisons ("BOP") facility in Lewisburg, Pennsylvania. Upon information and belief, that facility is intended to house pretrial detainees, with access to video teleconference capabilities, attorney-client communication, and law libraries. All federal inmates – pretrial detainees and those recently sentenced in federal court – remain in the custody and care of the USMS.

The government appreciates the seriousness of the findings in the November 1, 2021 USMS memorandum regarding CDF and is in close contact with the District of Columbia authorities and other law enforcement partners regarding the issues identified by USMS. For example, D.C. Deputy Mayor for Public Safety Chris Geldart reports in correspondence dated November 3, 2021, that an Oversight and Monitoring Team, including Rev. Isaac of the District of Columbia Corrections Information Council ("CIC"), "completed a thorough tour" of CDF and has started the following work: (1) determine if there is a need to move certain inmates from CDF to CTF; (2) compile all current and recent inspection reports/documents related to conditions, staffing, and operations at CDF in the context of the observations reported in the USMS letter; and (3) create a prioritized, remedial action report.

The government also understands that the process of designation by which a detainee is placed at a certain facility is not effortless. The USMS, in consultation with DOC, take steps to determine whether a prisoner is suitable for a certain environment, considering a variety of factors, such as security risks and medical concerns. With the new revelations by USMS and the ongoing inquiry into the conditions at DOC, the various levels of scrutiny demand patience and careful coordination. As mentioned above, numerous defendants have filed motions requesting a move to CTF from CDF in the wake of the USMS findings about CDF.

For the most current information concerning conditions at CDF and DOC's response to the USMS memorandum, the U.S. Attorney's Office refers the Court to DOC's General Counsel's Office.

**ARGUMENT**

**I.     There is No Legal Authority for Plaintiff's Requested Remedy.**

Although the government is sympathetic to Glover's concerns about the conditions in CDF and the ability to adequately prepare for this case if transferred to the proposed facility in Pennsylvania, this Court is not the proper forum for Glover to seek transfer. Indeed, Glover cites no authority in his emergency motion to support his request for transfer.

Glover is detained pursuant to 18 U.S.C. § 3142(f)(1)(A). The Court has the authority, as a judicial officer, to determine release or detention pending sentencing, pursuant to the statute. *United States v. Harris*, 451 F. Supp. 3d 64, 68 (D.D.C. 2020) ("No one doubts, for example, that the phrase 'judicial officer' . . . includes district court judges."). This statute does not give the Court the authority to determine where the defendant can be placed once ordered to the custody of the Attorney General. 18 U.S.C. § 3142. Instead, placement of a prisoner is in the hands of the BOP, and "a designation of a place of imprisonment . . . is not reviewable by any court." 18 U.S.C. § 3621(b). Under 18 U.S.C. § 3624(c)(2), the BOP, not the courts, has "the authority" to place prisoners. While this case involves the USMS, and not BOP, the rationale underlying the spirit of the law is clear. The defense, the Court, and even undersigned counsel do not have full visibility into the classification process of defendants, which is appropriately within the purview of DOC and USMS. If this Court were to grant Glover's motion without an individualized assessment of such need for transfer, it could create meaningful logistical hurdles to addressing the conditions at CDF. Accordingly, Glover's request for transfer to CTF must be denied. *See United States v. Orji*, 486 F. Supp. 3d 398, 403 (D.D.C. 2020) (denying the defendant's petition for compassionate release because the defendant failed to petition BOP to review his case and thus did not show that he satisfied the statutory exhaustion requirement); *see also Plata v. Newsom*, 445 F. Supp. 3d 557,

571 (N.D. Cal. 2020) ("[T]he Court concludes that it lacks authority to require [the California Department of Corrections and Rehabilitation] to release any inmates or transfer them to non-CDCR institutions.").

If the defendant argues that the DOC's placement of him violates his constitutional rights, the appropriate vehicle is a civil action under 42 U.S.C. § 1983.[1] *See Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life."); *United States v. Banks*, 422 F. App'x 137, 138 n.1 (3d Cir. 2011) (per curiam) ("We agree with the District Court that a motion filed in his criminal case was not the proper vehicle for raising the claims about prison conditions contained in that motion."); *United States v. Garcia*, 470 F.3d 1001, 1003 (10th Cir. 2006) (noting that, because the defendants' "challenge[s] to the conditions of confinement . . . were raised in motions filed in their respective criminal cases . . . they were properly denied by the district court"); *United States v. Folse*, Nos. CR 15-2485 JB, CR 15-3883 JB, 2016 WL 3996386, at *15 (D.N.M. June 15, 2016) ("The general rule is that a defendant must file a separate civil action to address his conditions of confinement."); *United States v. Luong*, No. Cr. 99-433 WBS GGH, 2009 WL 2852111, at *1 (E.D. Cal. Sept. 2, 2009) ("As several courts have recognized, the proper procedure to redress a defendant's grievances regarding treatment within a jail or prison is to file a civil suit against the relevant parties . . . rather than a motion in his criminal case."); *United States v. Wells*, Cr. No. 3:02CR-20-H, 2007 WL 3025082, at *2 (W.D. Ky. Oct. 15, 2007) ("[T]o the extent Wells is challenging his condition of confinement by claiming that his life is in danger, the appropriate

---

[1] Prisoners have "no inherent constitutional right to be confined in a particular institution or to enjoy a certain classification." *Ledger v. Walters*, 230 F.3d 1358 (6th Cir. 2000) (citing *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983)); *see also Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). The Supreme Court has held that the ability to transfer prisoners is essential to prison management. *See Meachum v. Fano*, 427 U.S. 215 (1976).

course would be to file a civil action against the alleged wrongdoers, not a Rule 60(b) motion in his criminal action.").

In fact, there is an active civil case in the U.S. District Court for the District of Columbia in which several inmates incarcerated at DOC filed a putative class action challenging the conditions of their confinement and alleging that DOC violated their constitutional rights by failing to ensure safe conditions during the COVID-19 pandemic. *See Banks v. Booth*, No. 1:20-cv-849-CKK (D.D.C.). In that case, U.S. District Court Judge Colleen Kollar-Kotelly appointed amici to investigate and report on the conditions at CDF and CTF and, as a result of that report, issued a preliminary injunction and ordered DOC to implement specific infectious disease control and prevention measures to ensure inmates' timely access to medical care and to provide access to confidential legal calls. *See Banks v. Booth*, 468 F. Supp. 3d 101 (D.D.C. 2020). While the injunction has expired, *see Banks v. Booth*, 3 F.4th 445, 448-49 (D.C. Cir. 2021), mediation remains ongoing.

## CONCLUSION

The government respectfully asks that this Court consider the difficult bureaucratic process that lies ahead in order to ensure the health and safety of all prisoners in the custody of the USMS. To the extent the Court is available, undersigned counsel will make herself, and a representative of the USMS available to address any questions or concerns in resolving the pending motion. *See* Local Criminal Rule 47(f) (requesting an oral hearing within the discretion of the Court).

WHEREFORE, the government respectfully requests that the Court deny Glover's Motion for Placement at the Correctional Treatment Facility.

Respectfully submitted,

MATTHEW GRAVES
United States Attorney

By: ___/s/ April N. Russo___
April N. Russo
Assistant U.S. Attorney
PA Bar: 313475
U.S. Attorney's Office for the District of Columbia
555 Fourth Street NW, Fourth Floor
Washington, DC 20530

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that a copy of the foregoing status report has been served by e-filing upon counsel for the defendants, this 12th day of November, 2021.

                                                                     _____/s/_____
                                                                      April N. Russo